STATE OF NORTH DAKOTA

COUNTY OF BURLEIGH

IN DISTRICT COURT

SOUTH CENTRAL JUDICIAL DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF | ) | Case No. **07 C 0 2 9 2** |
|  | ) |  |
| DIAL UP SERVICES, INC. | ) | **NOTICE OF MOTION AND** |
| dba SIMPLE.NET | ) | **MOTION TO COMPEL** |
|  | ) |  |
| Respondent. | ) | CPAT 050029.003 |

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

To:    Dial Up Services, Inc.
       dba Simple.Net
       4840 E. Jasmine, Ste. #110
       Mesa, AZ 85205

       (including any "doing business as" names, formal corporate names, fictitious
       names of any kind or any variations of the same, hereinafter "Respondent")

       c/o Peter Strojnik, Esq.
       The Law Firm of Peter Strojnik
       3030 N. Central Ave., Ste. 1401
       Phoenix, AZ 85012-2712

       PLEASE TAKE NOTICE pursuant to Rule 3.2 of the North Dakota Rules of Court

that State of North Dakota ex rel. Attorney General Wayne Stenehjem ("North Dakota")

brings this motion to compel the overdue responses to Civil Investigative Demand ("CID")

issued by North Dakota to Respondent.

       On November 30, 2006 North Dakota issued a Civil Investigative Demand to

Respondent in conjunction with North Dakota's investigation into a "promotional check"

marketing scam.  Attached hereto as **Exhibit 1**, and incorporated by reference, is a true

and correct copy of the Civil Investigative Demand and accompanying Affidavit of Service

By Mail.  Responses were due January 5, 2007.  On January 4, 2007, counsel for

Respondent contacted North Dakota requesting a one-month extension; the request was

RECEIVED & FILED

**ATTACHMENT 2**

FEB 0 6 2007

granted. Attached hereto as **Exhibit 2**, and incorporated by reference, is a true and correct copy of the January 4, 2007 e-mail exchange confirming the extension. On February 5, 2007, the undersigned received a call from counsel for Respondent, seeking another extension. No good cause for the additional extension having been offered, the request was denied. Responses are now overdue.

The Attorney General has incurred in excess of $250 in attorney's fees in bringing this Motion and is entitled to reimbursement pursuant to N.D.C.C. § 51-15-10.

WHEREFORE, North Dakota requests an Order be entered by the Court as follows:

1.    Pursuant to N.D.C.C. § 51-15-06, compelling Respondent's compliance with the Civil Investigative Demand on or before 15 days after issuance of said Order;

2.    Suspending Respondent's business activities in the State of North Dakota, including but not limited to enjoining the sale or advertisement of any merchandise in the State of North Dakota unless and until complete and timely compliance is obtained, and satisfactory proof thereof presented to the Court; and

3.    Ordering the Respondent to pay the Attorney General $250 as reimbursement of attorney's fees incurred in bringing this Motion to Compel on or before 15 days after issuance of said Order.

This motion is based on the papers filed herewith. You are notified that upon the filing of briefs or the expiration of the time for filing the briefs, the motion is deemed submitted to the Court unless any party requests oral argument on the motion. You are further notified that failure to file a responsive brief is an admission that, in the opinion of the party or counsel, the motion is meritorious.

You are referred to the provisions of North Dakota Rule of Court 3.2 with regard to the time within which a responsive brief must be filed and the procedure to be followed if you wish to request a hearing or oral argument on the motion.  North Dakota does not request a hearing or oral argument at this time.

Dated this 5th day of February, 2007.

**STATE OF NORTH DAKOTA**
Wayne Stenehjem
Attorney General

By: _____

Parrell D. Grossman, NDBN 04684
Assistant Attorney General
Director, Consumer Protection
 & Antitrust Division
Office of Attorney General
4205 State Street
PO Box 1054
Bismarck, ND  58502-1054
Telephone (701) 328-5570

G:\CPAT\Multi\Simple.Net\MtnCompel.doc

OFFICE OF ATTORNEY GENERAL
CONSUMER PROTECTION AND ANTITRUST DIVISION
P.O. BOX 1054
BISMARCK, NORTH DAKOTA 58502-1054

701-328-5570 (Telephone)
701-328-5568 (Facsimile)



STATE OF NORTH DAKOTA

COUNTY OF BURLEIGH

BEFORE THE

ATTORNEY GENERAL

|  |  |  |
|---|---|---|
| IN THE MATTER OF | ) | |
| | ) | **CIVIL INVESTIGATIVE DEMAND** |
| DIAL UP SERVICES, INC. | ) | |
| dba SIMPLE.NET | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | CPAT No. 050029.003 |

To:     Dial Up Services, Inc.
        dba Simple.Net
        4840 E. Jasmine, Ste #110
        Mesa, AZ 85205

(collectively, including all of those entities' "doing business as" names, formal corporate names, fictitious names of any kind or any variations of the same, "Respondent")

c/o Peter Strojnik
The Law Firm of Peter Strojnik
3030 North Central Ave, Ste 1401
Phoenix, AZ 85012-2712

The Attorney General of North Dakota having determined it is in the public interest that an investigation be made to ascertain whether Respondent has engaged in, is engaging in, or is about to engage in any practice declared to be unlawful under North Dakota Century Code ("N.D.C.C.") ch. 51-15, commonly referred to as the Consumer Fraud Law and believing you have information relevant to the activities of Respondent and/or its related entities, and pursuant to authority granted to the Attorney General of North Dakota by N.D.C.C. ch. 51-15;

**EXHIBIT**
1

NOW, THEREFORE, under the authority given the Attorney General by N.D.C.C. § 51-15-04, you are directed and ordered to produce documents, permit the inspection and copying thereof and provide information requested herein.

You may comply with this Civil Investigative Demand by sending legible copies of the requested documents, together with any other information requested by the Civil Investigative Demand, along with a fully-executed Certification in the form attached hereto, to Parrell D. Grossman, Assistant Attorney General, to be received on or before January 5, 2007.

Your attention is called to the provisions of N.D.C.C. § 51-15-06. Failure to comply with this Civil Investigative Demand may result in the Attorney General petitioning a District Court for an order compelling your compliance, or such other relief as permitted by law, including suspending your business activities in the State of North Dakota and enjoining the sale or advertisement of any merchandise until compliance is obtained.

Dated this 30th day of November, 2006.

STATE OF NORTH DAKOTA
Wayne Stenehjem
Attorney General

By: _Parrell D. Grossman_

Parrell D. Grossman, NDBN 04684
Assistant Attorney General
Director, Consumer Protection
 & Antitrust Division
Office of Attorney General
4205 State Street
PO Box 1054
Bismarck, ND  58502-1054
Telephone (701) 328-5570

G:\CPAT\Multi\Simple.Net\CID 113006.doc

## INSTRUCTIONS

Compliance with this Civil Investigative Demand ("CID") shall be in conformity with the following instructions:

1.     Unless otherwise stated the relevant time period is from January 1, 2003, going forward and, unless otherwise stated, is not limited to activities or actions in or relating to the State of North Dakota.

2.     "Person" or "persons" include natural persons, sole proprietorships, firms, partnerships, associations, joint ventures, limited liability entities and corporations.

3.     "Respondent" includes Respondent's affiliates, divisions, subsidiaries, employees, representatives, agents, officers, directors and/or any person acting on their behalf, and encompasses any trade names, "doing business as" names, aliases, pseudonyms, brand names or names or titles of any kind used in connection with Respondent.

4.     "You" or "your" refers to Respondent, its present and former officers, present and former directors, present and former agents, present and former employees and all other persons acting or purporting to act for or on behalf of it and all other persons exercising or purporting to exercise discretion, make policy and make decisions for it.

5.     "Identify" when used in reference to an individual person means to state his/her full name, and his/her present or last-known title and business affiliation, business and residential addresses and business and residential telephone numbers.

6.     "Identify" when used in reference to a person other than an individual means to state a corporate or business name, address, telephone number and type of business.

3

7.     "Identify" when used in reference to a document or a communication means to describe the type of document or communication (*e.g.*, letter, memorandum, e-mail, chart, meeting, telephone conversation, *etc.*), the date it was created or occurred, the authors and recipients or participants, the general subject matter of the communication, and its present location and custodian, if applicable.   If any such document was, but is no longer, in your possession or subject to your control, state what disposition was made of it.

8.     "Document" means all writings of any kind or nature, including but not limited to correspondence, memoranda, reports, notices, minutes, notes whether handwritten or otherwise, advertising matter, charts, books, ledgers, records, accounts, data compilations, CD-ROMS, computer disks, hard drives, computer printouts, internet web sites, e-mails, voice mails, text messaging, faxes, photographs, recordings, papers filed with public or governmental authorities, letters, log books, telegrams, telexes, price quotations, catalogs, price lists, scripts, transcripts, invoices, microfilm, microfiche, receipts, contracts, regularly-kept summaries or compilations of business records, inventories, ledgers, accounts, sales records, vouchers, shipping invoices or notices, newsletters, price lists, bids, worksheets, brochures, reports, surveys, tests, strategies, plans, studies, contracts, agreements, understandings, arrangements, appointment books, calendar and diary entries, pamphlets, charts, tabulations, bulletins, interoffice and intraoffice communications, training materials, records of meetings, conferences and telephone or other conversations or communications.   The term "documents" further includes computer printouts and any data sheet or data processing card or any other written, recorded, transcribed, punched, taped, recorded, filmed, photographed or graphic

4

matter however produced or reproduced, and any other data in any form. The term incorporates the definitions found in N.D.R.Ev. 1001 and includes all information maintained on computer or other machine-readable form. Documents maintained on computer or other machine-readable format may be produced by transcribing the information contained therein to a hard copy printout and producing the original or a legible copy of the printout. A draft or non-identical copy of a document is a separate document within the meaning of this term.

9.    "Policy" shall mean each rule, procedure, or directive, formal or informal, written or unwritten, and each common understanding or course of conduct which was recognized as such by you, your present and former officers, agents, employees, or other persons acting or purporting to act on your behalf, which was in effect at any time during the period covered by this CID and which includes any changes of policy.

10.    "Regarding," "relating to" or "relates to" means consisting of, referring to, describing, discussing, reflecting, citing, pertaining to, evidencing, concerning, summarizing or analyzing, whether directly or indirectly, the matter in question, without limitation unless specifically indicated.

11.    "Internet Access Services" refers to the Internet access services offered for sale by Dial-Up Services, Inc., and its agents or representatives, including the provision of or hosting of E-Mail accounts and any other Internet-related services offered in connection with those access services.

12.    "Promotional Check" means a negotiable instrument in the format of a check written on an account and made payable to a person (or business) which is being

solicited for the sale of goods and services, including, but not limited to, Internet Access Services.

13.    Unless the text clearly requires otherwise, the singular form of a word includes the plural and *vice versa,* all pronouns apply to the male, female and neutral genders, "any" includes the word "all" and *vice versa,* the past tense of a word includes the present tense and *vice versa* and the words "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the request all responses which might otherwise be construed to be outside its scope.

14.    The scope of this demand encompasses all your documents, wherever situated, including those documents in the possession, custody or control of officers, directors, partners, owners, employees, agents, servants, independent contractors or any other person, entity or third party regardless of where these persons are located.

15.    Whenever the information requested is contained in or may otherwise be derived or ascertained from a document, you are to identify with specificity the document(s) from which the answer may be derived or ascertained and to produce the document(s) for inspection and copying.

16.    Each document submitted in compliance with this CID shall be numbered consecutively on the face of the document and shall clearly identify the paragraph of the CID to which the document is responsive.  Copies of original documents shall be legible in their entirety.

17.    If any document called for by this CID is withheld under any claim of privilege, furnish a list identifying each document for which the privilege is claimed, the names, titles and addresses of the author(s) and recipient(s) of the document, the date of

the document, a description of the substance of the document and the nature or basis for the claim of privilege.

18.    The response to this CID shall include the name and title of the person preparing the response and a sworn statement by the preparer that the information is true, accurate and complete.

19.    You are placed on notice that all documents and/or other data compilations which might impact on the subject matter of this demand are to be preserved and that any ongoing process of document destruction involving such documents should cease. Pursuant to N.D.C.C. § 12.1-09-03 a person is guilty of a criminal offense if he or she intentionally "alters, destroys, mutilates, conceals, or removes a record, document, or thing with intent to impair its verity or availability" in an official proceeding.  As such, intentional destruction of any documents related to this matter may result in criminal prosecution.

20.    These discovery requests are continuing in nature and responses must be supplemented and amended as appropriate.

## WRITTEN QUESTIONS

1.    Identify the full and complete legal name(s) of the entity(ies) that does/do business as Respondent, and all your "doing business as" names, trade names, brand names, fictitious names of any kind, and any variations of the same.

2.    Describe the Internet access services offered for sale by Simple.Net through any promotional marketing efforts involving the use of a Promotional Check.  In making your response, include:

     a.     A description of all features or benefits you would contend are offered by Simple.Net's services, and

     b.     Any variations on services which may be available to customers, such as different packages offering different features or benefits.

3.     Describe the records maintained by you, or by third parties on your behalf or at your request, which would

     a.     Reflect the date on which any Internet Access Services were sold to a customer and the date upon which any account for such customer was opened; the method of solicitation through which the account was acquired, the method through which the account is billed, and any documents or communications reflecting the customer's agreement to purchase the services;

     b.     Reflect the provision of Internet Access Services for a customer and any usage of those services by a customer (or by any person using their account), including, but not limited to, the amount of time spent by the customer on-line through the service, whether the customer has created any e-mail accounts or used any e-mail addresses through the Simple.Net domain, the volume of e-mails sent and/or received by the customer using the Simple.Net domain address; or

     c.     Reflect any use by a customer of any additional features or benefits offered in connection with the Internet Access Services that were sold to that customer.

Provide sample documentation, such as screen prints or other records that depict such information and how it is maintained by and accessible to you.

4.    Identify the States in which you transact business and whether you are registered/licensed/have a certificate of authority under the laws of each such State.

5.    State the date on which Respondent began marketing its Internet Access Services using a Promotional Check.

6.    State the total number of customers to whom Respondent has sold Internet Access Services (regardless of their present status as customers).

7.    State the total number of customers who are currently paying Respondent for Internet Access Services.

8.    State the total number e-mail accounts presently hosted by Respondent.

9.    Provide a complete original color specimen of each version of solicitation used by Respondent to offer or advertise the sale of Internet Access Services, since January 1, 2003, and, with regard to each specimen, provide any internal identification used by Respondent to distinguish it from other solicitation/advertising pieces and state the dates during which it was in use.  The specimens should include mailing envelopes and all inserts.

10.    State the font size and identify the type used for the "endorsement disclosure" appearing on the reverse side of each Promotional Check form you have utilized.   Further, describe the dates of each modification made to either the content of that "endorsement disclosure" or its format or presentation since January 1, 2003.

11.    State the font size, identify the type, and describe any "shading" or other instructions regarding the boldness of the type, used for the "Terms of Offer" contained on the reverse side of the insert document mailed with each Promotional Check Further,

describe the dates of each modifications made to either the content of that "Terms of Offer" or its format or presentation since January 1, 2003.

12.    Provide copies of all drafts created which lead to the creation of the solicitations requested by Demand Number 9.

13.    To the extent a bulk mailing of North Dakota solicitations containing Promotional Checks was tracked or recorded by you, provide the following information:

a.  State the date or date range for each North Dakota mailing made of solicitations made containing Promotional Checks;

b.  State the number of solicitations mailed within that mailing;

c.  State the number of Promotional Checks deposited from that mailing;

d.  State the number of accounts receivable created for new customers as a result of that mailing, the number of "Mini WebPages" designed and placed in the Internet Yellow Pages for those new customers; and

e.  Provide copies of any United States Postal Forms related to bulk mailings, including PS Form 3602-RVS, for any of the above-referenced mailings sent on behalf of Respondent.

14.    State the total number of solicitations containing Promotional Checks mailed by or on behalf of Respondent for the purpose of soliciting the sale of Internet Access Services since January 1, 2003.

15.    State the total number of North Dakota recipients or customers which have deposited a Promotional Check contained in a solicitation soliciting the sale of Internet Access Services.

16.    State the total number of North Dakota customers which purchased Internet Access Services in response to a solicitation containing a Promotional Check which are still "current" in their accounts, i.e., have paid Respondent as of the last billable period.

17.    With respect to those customers described by Demand Number 16, whose accounts are still "current," provide the following:

a.    State the number of current accounts that are billed through customers' telephone bills;

b.    State the number of current accounts that are billed through an automated withdrawal from the customer's bank account (an ACH transaction);

c.    State the number of current accounts that are billed through customers' non-telephone utility bills;

d.    State the number of current accounts that are billed through a monthly charge placed on the customers' credit card;

e.    State the number of current accounts that are billed by the mailing of a monthly bill or invoice to the customer.

18.    Identify your sources for the identities of the persons in North Dakota to whom you direct advertising or solicitations.  Describe in detail the process or means by which you obtain those names and addresses.

19.    State the name of each person who designed or who gave advice to you concerning solicitation by means of a promotional check.  If the third party was a lawyer from whom you sought legal advice, you may limit your response to that fact.

20.    If you conducted or considered any consumer response studies, perception surveys, test marketing efforts or other testing or marketing work, or articles describing the

same, in deciding to use any of the solicitations described by Demand Number 9, identify the same and produce copies.

21.    Describe any changes made in the policies or the business practices of Respondent relating to the use of, content of, or format of any solicitation containing a Promotional Check, and further describe when that change occurred and how it was implemented.

22.    If you contend that a solicitation used by you containing a Promotional Check has been either expressly or implicitly approved by a law enforcement agency, provide a copy of any letter or other communications and describe any other communications on which you rely for that contention.

23.    Describe all efforts made by Respondent to prevent a prospective customer which has instituted lockbox procedures for handling all negotiable checks received by that company from mistakenly placing a Promotional Check into its lockbox so as to be automatically deposited prior to that prospective customer (or its authorized employee) actually examining the mailing and making a decision on behalf of the company to purchase the services being offered.

24.    Describe any marketing efforts undertaken by you to solicit the sale of Internet Access Services that do not involve the use of a Promotional Check.  With regard to each such effort or advertising campaign, state the dates during which the effort was made, the scope or volume of sales made through such effort, and, if such effort was ended, explain why.

25.    Identify by name, address, telephone, and the principal contact person(s) with whom you communicate, all third parties retained by you for the purpose of engaging

in any verification efforts relating to sales of your Internet Access Services through the use of solicitations containing Promotional Checks.

26.    To the extent any telephonic verification efforts are made by you, or by others on your behalf, relating to sales obtained through the use of solicitations containing Promotional Checks, provide copies of all scripts, guides, FAQ's, and all other training and instructional materials provided to the persons engaged in those verification calls or related telephonic contacts with customers or prospective customers.  Further state whether any portions of those telephonic verification efforts are recorded and describe how that is done and how those recordings are maintained.

27.    Describe your use of any outbound telemarketing to sell Simple.Net Internet Access Services, state whether those efforts are exclusive of the use of a solicitation containing a Promotional Check, and identify by name, address, telephone, and the principal contact person(s) with whom you communicate, all third parties retained for the purpose of engaging in any such telemarketing sales and/or the verification of any telemarketing sales made.  If applicable, provide further description of such marketing efforts in response to Demand Number 24.

28.    Describe any records you maintain, control or have access to which reflect the age of customer accounts so as to indicate when a customer was sold Simple.Net Internet Access Services and the length of time that customer has continued to pay for such goods and services.  Further, provide specimen samples of any "screen prints" or other records that reflect this information and describe how that information is maintained.

29.    Identify by name, address, telephone, and the principal contact person with whom you have communicated, all companies which have provided the service of a billing

aggregator for the purpose of processing charges for your Simple.Net Internet Access Services through Local Exchange Carriers or other utility bills of your customers. Your response should include any such company used since you utilized this billing channel.

30.    Produce copies of all contracts and other agreements between you and any of the companies identified in response to Demand Number 29 which have been in existence at any time since January 1, 2003.

31.    Identify the person(s) employed (or retained as independent contractors) by you for the purpose of negotiating and communicating with any of the companies identified in response to Demand Number 29 and describe the duties or responsibilities and scope of communications that person has had and is having with any of those companies.

32.    Produce copies of all correspondence received, directly or indirectly, by you from any Local Exchange Company regarding customer complaints (e.g., in the nature of "cramming" complaints) regarding charges submitted to the Local Exchange Company on your behalf, and produce all correspondence from any Local Exchange Company which has advised you or a billing aggregator that it will not continue billing on your behalf.

33.    Produce copies of all correspondence received, directly or indirectly, by you from any company identified in response to Demand Number 29 regarding customer complaints (e.g., in the nature of "cramming" complaints or other complaints regarding charges submitted to the Local Exchange Company on your behalf), and produce all correspondence from any billing aggregator which has advised you that it will not continue billing on your behalf.

34.    Produce all correspondence, contracts or other communications received by you which has caused you to discontinue the use of a Promotional Check as a Letter of

Authorization in some areas of the country where you bill for your services through Local Exchange Carriers and identify those areas in which you have ceased billing customers through this method.

35.    Identify by name, address, telephone, and the principal contact person with whom you have communicated, all companies which have provided the service of an independent service organization or automated clearing house (ACH) for the purpose of processing bills to customers for your Simple.Net Internet Access Services through an automated clearing house (ACH).  Your response should include any such company used since you utilized this billing channel.

36.    Produce copies of all contracts and other agreements between you and any of the companies identified in response to Demand Number 35 which have been in existence since January 1, 2003.

37.    Identify the person(s) employed (or retained as independent contractors) by you for the purpose of negotiating and communicating with any of the companies identified in response to Demand Number 35 and describe the duties or responsibilities and scope of communications that person has had and is having with any of those companies.

38.    Produce copies of all correspondence received, directly or indirectly, by you from any ACH or independent service organization offering ACH services regarding customer complaints (e.g., in the nature of charge-backs, refusals to pay or challenges to any charges submitted on your behalf), and produce all correspondence from any ACH or independent service organization which has advised you or a billing aggregator that it will not continue billing on your behalf.

39.    Identify all collection agencies used by Respondent and provide contact information for those agencies.

40.    Describe the policies and practices of Respondent and its agents in collecting or attempting to collect unpaid bills for Simple.Net Internet Access Services.

41.    Describe the policies of Respondent (and of any agents it retains for such purposes) for handling customer inquiries concerning Promotional Checks, charges, bills or invoices arising from sales of Simple.Net Internet Access Services initially involving the use of a Promotional Check, offers or solicitations for the renewal of Simple.Net Internet Access Services, or any efforts by Respondent to collect for such sales.

42.    Produce copies of all scripts, guides, FAQ's, pattern responses for inquiries, standardized customer service letters, and all other training and instructional materials provided to employees or agents or representatives engaged in the efforts described in Demand Number 41.

43.    State and provide documentation verifying the number of new customer accounts submitted for billing (by any method) on a monthly basis since January 1, 2003.

44.    State and provide documentation verifying the number of new customer accounts closed as "bad debt" or otherwise for lack of collection or due to a request from the customer, on a monthly basis since January 1, 2003.

45.    State and provide documentation verifying the monthly, quarterly, and annual ratio (or percentage) of closed accounts in comparison to new customer accounts.

46.    State the dollar amount in refunds paid to customers requesting to close customer accounts on a monthly, quarterly, and annual basis since January 1, 2003.

47.    Copies of any sworn statements, transcripts of testimony or depositions provided by employees, agents or representatives of Respondent, relating to any allegation of deception or misrepresentation or unfair sales practices lodged against Respondent, relating to their solicitation or billing practices, or provided in the course of any such litigation.

48.    Identify by name, address and telephone number and any identifying account number, each company located in North Dakota to whom you sent or caused to be sent a solicitation for the purchase of Simple.Net Internet Access Services, which contained a Promotional Check since January 1, 2003.

49.    Identify by name, address and telephone number and any identifying account number, each customer located in North Dakota which deposited a Promotional Check sent in relation to one of the above-described solicitations since January 1, 2003, and state the date on which that deposit was made.

50.    Identify by name, address and telephone number and any identifying account number, each customer located in North Dakota from which Respondent collected at least one monthly fee for Internet Access Services and, with respect to each such customer, provide a printout or other readable summary of the customer account showing all such payments received, the dates on which they were received, and indicating the method(s) by which those payments on those accounts are being or have been made, and the current status of the account.

51.    Identify by name, address and telephone number and any identifying account number each customer located in North Dakota from whom Respondent has received any communications requesting to cancel any purchase of Simple.Net Internet

Access Services since January 1, 2003, and, with regard to each, state the date of each communication, state the current status of the request, and provide a copy of all correspondence received from the company or sent to the Respondent.

52.    Identify by name, address and telephone number and any identifying account number each customer located in North Dakota who were denied cancellation for any reason and provide the reason(s) why.

53.    For each customer located in North Dakota which is current in its payments for Simple.Net Internet Access Services and which you contend initially agreed to the purchase of such goods and services by depositing a Promotional Check, produce a copy of the Promotional Check showing that customer's endorsement of the same.

54.    Identify the total number of account of North Dakota customers solicited with a "live check" that have been sent to a collection agency, and identify the number of accounts sent to each agency identified by year.

55.    Identify all persons located in North Dakota who have made complaints to you, or about you to third-parties such as Offices of Attorneys General, the Federal Trade Commission or the Better Business Bureau, regarding your business or marketing practices, including the date of the complaint, nature of the complaint and resolution of the complaint.

56.    Identify the mailing address and physical street address for your principal place of business and for all other places of business, including any post office boxes, private mail boxes or the like.

57.    Produce copies of the articles of incorporation for Respondent, and for any other related corporate entities participating in the offer for sale, sale of, collection of

payment for, and provision of Simple.Net Internet Access Services. Provide also any amendments and all annual reports submitted to the State of Arizona.

58. Provide copies of all minutes and corporate resolutions reflecting decisions made by officers or directors of Respondent, to adopt or ratify the use of solicitations containing Promotional Checks and any reports or other information presented to such officers or directors regarding complaints or requests for cancellations and refunds by companies who received those solicitations.

59. Identify every state in which Respondent is registered as a foreign corporation.

60. Identify every corporate entity, limited liability company, partnership or joint venture in which Respondent has any ownership interest or control.

61. Identify the officers and directors of Respondent at the present time, state the date the current holder(s) of these positions assumed those positions, and identify any persons who formerly held any such positions at any time since January 1, 2003.

62. Identify by name, address (mailing and physical residential street address), title and telephone number all of Respondent's owners, members, partners, directors, officers, principals or the like.

63. Identify all your website addresses, URLs, e-mail addresses, IP addresses, domain names and the like.

64. Describe the relationship between Respondent, and any other affiliated entity, and provide the following information:

      a. Describe which entity is responsible for

1.  Creating the advertisements/solicitations to be used to solicit the purchase of Simple.Net Internet Access Services;

2.  Selecting the prospective customers to whom the above advertisements/solicitations are to be sent;

3.  Procuring solicitation/mailing lists for purposes of mailing the above advertisements/solicitations to prospective customers;

4.  Paying those Promotional Checks which are deposited by prospective customers;

5.  Causing to be submitted to any third party for billing and collection purposes the directive to process a charge against a customer's telephone bill, utility bill, or banking account;

6.  Receiving and accounting for receipt of any monthly payments from customers;

7.  Contacting customers regarding the setting up of their e-mail accounts, providing technical support, or providing any other customer support services;"

8.  Contacting customers for the purpose of confirming their intention to purchase Simple.Net Internet Access Services; and

9.  Communicating with a customer seeking to cancel the purchase of Simple.Net Internet Access Services.

b.  Identify the individual persons responsible for overseeing each of the above functions and those individual persons who would be produced by you for

purposes of providing factual testimony regarding each function and its performance.

c. In the event any of the functions described above are performed by third parties, identify those third parties and describe the responsibilities and duties assigned or delegated to them by you related to those functions.

65. Provide an organizational chart or schematic identifying all departments, divisions or similar functional units within Dial-Up Services, Inc., dba Simple.Net and any other affiliated corporations, and all independent contractors, participating in any of the functions listed by Demand Number 64 above, and identify the individuals with managerial oversight of those departments, divisions or units, and the general reporting relationships within and among those units and through management.

66. Provide specimen copies of any version of contract between you and any person retained by you as an independent contractor who has been delegated by you any responsibilities for any of Respondent's marketing activities or billing or collecting activities.

67. Provide the name and registered address for Respondent's Registered Agent for the State of North Dakota.

68. For the time period January 1, 2003 to the present, identify those instances in which you have been investigated, sued or prosecuted (either civilly or criminally) by any governmental agency.

69. For the time period January 1, 2003 to the present, identify those instances in which you have been sued by any (non-governmental) person for allegedly deceptive or misleading acts or omissions or for any alleged violation of fraud, false advertising, or other consumer protection laws.

## DOCUMENTS REQUESTED

1.    All documents relating to each North Dakota person purchasing any good or service from you, including documents sufficient to identify the person, identify the merchandise or service purchased, the date(s) of the transaction(s), the amount paid, the means by which payment was made and whether the merchandise was actually delivered or performed to the satisfaction of the customer.

2.    All documents relating to any North Dakota consumer complaints or customer disputes, including documents sufficient to identify the person, the nature of the complaint or dispute, the steps taken by you to address the complaint or dispute and the disposition of the complaint or dispute.

3.    For the time period January 1, 2003 to the present, all documents relating to instances in which you have been investigated, sued or prosecuted (either civilly or criminally) by any governmental agency.

4.    For the time period January 1, 2003 to the present, all documents relating to instances in which you have been sued by any (non-governmental) person for allegedly deceptive or misleading acts or omissions or for any alleged violation of fraud, false advertising, do not call or other consumer protection laws.

5.    Copies of all advertising, soliciting or marketing materials used by you in North Dakota.

6.    Documents relating to your policies or procedures relating to customer service, consumer complaints and refunds.

## <u>CERTIFICATION</u>

I declare, under penalty of perjury, that I am authorized to make this certification on behalf of Respondent, have made a diligent search and inquiry to locate all documents and things in Respondent's care, custody or control which are responsive to State of North Dakota's Civil Investigative Demand and that the accompanying responses and documents and things are true, accurate and complete.

The accompanying documents and things are memoranda, reports, records, or data compilations of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, kept in the course of a regularly conducted business activity and it is Respondent's regular practice to make the memorandum, report, record, or data compilation.

_____
(Respondent's Name)

By: _____
(signature)

_____
Name (print)

_____
Title or Position

_____
Physical Address (PO Box not sufficient)

Subscribed and sworn to before me
this _____ day of _____, 2006.


_____
NOTARY PUBLIC

23

STATE OF NORTH DAKOTA

COUNTY OF BURLEIGH

BEFORE THE

ATTORNEY GENERAL

IN THE MATTER OF                      )
                                      )
DIAL UP SERVICES, INC.                )
dba SIMPLE.NET                        )
                                      )
           Respondent.                )

**AFFIDAVIT OF SERVICE
BY MAIL**

CPAT No. 050029.003

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

STATE OF NORTH DAKOTA     )
                          ) ss
COUNTY OF BURLEIGH        )

Linda K. Hagen states under oath as follows:

1.      I swear and affirm upon penalty of perjury that the statements made in this affidavit are true and correct and made upon personal knowledge.

2.      I am of legal age and on the 30th day of November, 2006, I served Civil Investigative Demand and Affidavit of Service by Mail upon the following by placing true and correct copies thereof in an envelope addressed as follows:

PETER STROJNIK
THE LAW FIRM OF PETER STROJNIK
3030 N CENTRAL AVE STE 1401
PHOENIX AZ 85012-2712

and depositing the same, with postage prepaid, in the United States mail at Bismarck, North Dakota.

_Linda K Hagen_
Linda K. Hagen

Subscribed and sworn to before me this 30th day of November, 2006.

_Alexis Bieber_
NOTARY PUBLIC

G:\CPAT\Multi\Simple.Net\AffServiceByMail 113006.doc

ALEXIS BIEBER
Notary Public
State of North Dakota
My Commission Expires Mar. 30, 2010

**Grossman, Parrell D.**

| | |
|---|---|
| **From:** | Grossman, Parrell D. |
| **Sent:** | Thursday, January 04, 2007 2:32 PM |
| **To:** | 'Strojnik@aol.com' |
| **Subject:** | RE: ND Investigative Demand |

Confirmed. 01/04/07

Parrell D. Grossman
Director
Consumer Protection & Antitrust Division
Office of Attorney General
PO Box 1054
4205 State Street
Bismarck, ND 58502-1054
(701)328-5570
(701)328-5568 (Fax)
pgrossman@nd.gov

---

**From:** Strojnik@aol.com [mailto:Strojnik@aol.com]
**Sent:** Thursday, January 04, 2007 1:48 PM
**To:** Grossman, Parrell D.
**Cc:** Strojnik@aol.com; DeVal2@simple.net
**Subject:** ND Investigative Demand

Hi, Parrell:

Thank you for your kind agreement to extend the time to respond to ND's Investigative Demand from January 5, 2007, to February 5, 2007.

Your courtesy in confirming this e-mail is greatly appreciated.

Peter Strojnik
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-297-3019
Facsimile: 602-296-0135
Cell: 602-524-6602
e-mail strojnik@aol.com
website: strojnik.com

EXHIBIT

2

1/4/2007