1    **WO**                                                                      HJ

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Dial Up Services, Inc., d/b/a/ Simple.Net,)        No. 07-00423-PHX-EHC
     a Nevada Corporation,                    )
10                                            )        **ORDER**
                    Plaintiff,                )
11                                            )
     vs.                                      )
12                                            )
                                              )
13   State of Oregon, State of Idaho, State of)
     North Dakota, State of Missouri, The)
14   Honorable David E. Reich, *Judge of the*)
     *South Central Judicial District of the State*)
15   *of North Dakota*, Kathryn Sticklen,)
     *Honorable Judge of the Fourth Judicial*)
16   *Distric of the State of Idaho*, Various)
     States 1-XXX,                            )
17                                            )
                    Defendants.               )
18                                            )
     ────────────────────────────────────────
19

20          Before the Court are the various Defendants' motions to dismiss (Dkts. 25, 26, 27, 34,

21   35, 36, 37, 38).  For the reasons discussed herein Plaintiff's complaint will be dismissed.

22   **I.    Background**

23          Plaintiff provides back-up mobile internet access to business customers for a fee of

24   $19.95 per month.  Plaintiff's marketing method involved the mailing of a check identified

25   as a "discount incentive" of $3.25.  The negotiation of the check signified the recipient's

26   request for Plaintiff's internet services; if the check was cashed, the customer was billed

27   $19.95 per month.  On May 9, 2001, the Federal Trade Commission ("FTC") commenced

28   a civil action against Plaintiff related to Plaintiff's check mailing marketing strategy.

1   Plaintiff and the FTC entered into a Stipulated Final Judgment and Order for Permanent

2   Injunction and Other Equitable Relief.  (Dkt. 3, Civ. No 01-00803-SMM).  The Court signed

3   the stipulation on July 30, 2001.

4             **A.**     **The Stipulated Final Judgment Between Plaintiff and the FTC**

5          The Stipulated Final Judgment between the Plaintiff and the FTC prohibited Plaintiff,

6   *inter alia*, from "making or assisting in the making of, expressly or by implication, orally or

7   in writing, any false or misleading statement or representation of material fact, including, but

8   not limited to, representations that:

9   A.      A solicitation check is a refund, rebate, receivable, or other payment for services

10          based on a prior or ongoing business relationship;

11   B.      Consumers can obtain a monetary rebate from [Plaintiff] without incurring any

12          obligations to [Plaintiff]; and

13   C.      [Plaintiff has] a prior or ongoing business relationship with consumers.

14   The Stipulated Final Judgment also enjoined Plaintiff from failing to disclose, clearly and

15   conspicuously:

16   A.      On the front of any solicitation check, or on the front of any stub attached to the

17          check, a statement that notifies the payee that the check is part of a "solicitation" or

18          that by cashing the check, the payee will become obligated to pay for a good or

19          service;

20   B.      On the back of the solicitation check, and above the endorsement line, a statement that

21          notifies the payee of the amount and frequency of the charge that [Plaintiff] will

22          impose if the payee deposits or endorses the check; and

23   C.      In a letter or statement attached to or enclosed with the solicitation check, all the

24          material terms associated with depositing or endorsing the solicitation check,

25          including: 1) a statement that [Plaintiff] will impose a charge if the payee deposits or

26          endorses the check; 2) the amount, billing method, and frequency of the charge; 3) a

27          description of the goods or services provided for the charge; and 4) an explanation of

28

1    how to cancel the check, including a customer service telephone number for inquiries

2    and/or cancellations.

3        In addition to the above prohibitions, the Stipulated Final Judgment contained

4    numerous other requirements, not discussed herein.  <u>See</u> (Dkt. 3, Civ. No 01-00803-SMM).

5        **B.    Plaintiff's Current Lawsuit**

6        Plaintiff filed the current case on February 22, 2007, seeking a declaratory judgment

7    and injunction to bar various states from investigating Plaintiff's mailing programs and

8    marketing activities.  Count One of the First Amended Complaint (Dkt. 5) seeks injunctive

9    relief based on alleged violation of the All Writs Act, 28 U.S.C. § 1651, and the Anti

10   Injunction Act, 28 U.S.C. § 2283.  Count Two seeks a declaratory judgment that Defendants

11   have violated Plaintiff's First Amendment rights to free commercial speech.  Plaintiff's

12   theory is that Defendants' investigative actions are a "sanction" to Plaintiff for its compliance

13   with the 2001 Stipulated Final Judgment between Plaintiff and the FTC and that such actions

14   amount to interference with the District Court's continuing jurisdiction over the Stipulated

15   Final Judgment.

16   **I.    Personal Jurisdiction**

17       The Court first addresses whether Defendants are subject to personal jurisdiction in

18   this Court.  Arizona's long-arm statute permits the exercise of personal jurisdiction to the

19   extent allowed by the United States Constitution.  <u>See</u> Ariz. R. Civ. P. 4.2(a); <u>Cybersell, Inc.</u>

20   <u>v. Cybersell, Inc.</u>, 130 F.3d 414, 416 (9th Cir. 1997).  Thus, Defendants may be subject to

21   personal jurisdiction in Arizona so long as doing so comports with due process.  Absent

22   traditional bases for personal jurisdiction (i.e., physical presence, domicile, and consent) the

23   Due Process Clause requires that a nonresident defendant have certain minimum contacts

24   with the forum state such that the exercise of personal jurisdiction does not offend traditional

25   notions of fair play and substantial justice.  <u>See</u> <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310,

26   316 (1945); <u>Doe v. Am. Nat'l Red Cross</u>, 112 F.3d 1048, 1050 (9th Cir. 1997) (citing <u>Int'l</u>

27   <u>Shoe</u>, 326 U.S. at 316).  The Due Process Clause protects a defendant's "liberty interest in

28   not being subject to the binding judgments of a forum with which he has established no

1   meaningful 'contacts, ties or relations.'"  <u>Omeluk v. Langsten Slip & Batbyggeri</u>, 52 F.3d

2   267, 269-70 (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 471-72 (1985)).  A

3   nonresident defendant's liberty interest is protected:

> By requiring that individuals have 'fair warning that a particular activity may subject
> [them] to the jurisdiction of a foreign sovereign,' the Due Process Clause 'gives a
> degree of predictability to the legal system that allows potential defendants to
> structure their primary conduct with some minimum assurance as to where that
> conduct will and will not render them liable to suit.

7   <u>Id</u>. at 270 (alteration in original) (quoting Burger King, 471 U.S. at 472).

8   "In determining whether a defendant had minimum contacts with the forum state such

9   that the exercise of jurisdiction over the defendant would not offend the Due Process Clause,

10  courts focus on 'the relationship among the defendant, the forum, and the litigation.'"

11  <u>Brink v. First Credit Resources</u>, 57 F. Supp. 2d 848, 860 (D. Ariz. 1999) (citing <u>Shaffer v.

12  Heitner</u>, 433 U.S. 186, 204 (1977)).  If a court determines that a defendant's contacts with

13  the forum state are sufficient to satisfy the Due Process Clause, then the court must exercise

14  either "general" or "specific" jurisdiction over the defendant.  <u>See</u> <u>Helicopteros Nacionales

15  de Colombia v. Hall</u>, 466 U.S. 408, 414-15 nn.8-9 (1984) (citations omitted); <u>Doe</u>, 112 F.3d

16  at 1050.  The nature of the defendant's contacts with the forum state will determine whether

17  the court exercises general or specific jurisdiction over the defendant.  <u>Id</u>.

18      **A.    General Jurisdiction**

19      A court may assert general jurisdiction over a nonresident defendant "[i]f the

20  defendant's activities in the state are 'substantial' or 'continuous and systematic,' . . . even

21  if the cause of action is unrelated to those activities."  <u>Doe</u>, 112 F.3d at 1050-51 (quoting

22  <u>Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.</u>, 784 F.2d 1392, 1396 (9th Cir.

23  1986)); <u>see</u> <u>Ziegler v. Indian River County</u>, 64 F.3d 470, 473 (9th Cir. 1995).

24      Plaintiff does not allege that any of the defendants have "substantial" or "continuous

25  and systematic" contacts with Arizona.  Indeed, Defendants are themselves states and state

26  court judges in other states.  Plaintiff has not cited any authority supporting this Court's

27  exercise of general jurisdiction over other states.  Thus, the Court cannot assert general

28  jurisdiction over Defendants.

1

### B.    Specific Jurisdiction

If a defendant does not have substantial or continuous and systematic contacts with the forum state, then the court must determine whether the defendant has had sufficient contacts with the forum state such that the exercise of specific jurisdiction over the defendant would not offend the Due Process Clause.  See Int'l Shoe, 326 U.S. at 316; Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1485 (9th Cir. 1993).  The Ninth Circuit applies a three-prong test to determine whether the defendant's contacts with the forum state are sufficient to subject him to the state's specific jurisdiction.  Schwarzenegger, 374 F.3d at 802.  Under this three-prong test, specific jurisdiction exists only if: (a) the nonresident defendant purposefully directs activities or consummates some transaction with the forum of the plaintiff, or performs some act by which he personally avails himself of the privilege of conducting activities in that forum; (b) the claim arises out of or relates to the defendant's forum-related activities; and (c) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable.  Id.; see, e.g., Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) (citing Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 416 (9th Cir. 1997)); see also Burger King, 471 U.S. at 472-73.

### 1.    Purposeful Availment Requirement

In discussing the specific jurisdiction test, the United States Supreme Court emphasized long ago that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe, 326 U.S. at 319).

More recently, the Supreme Court held that a court may also have specific jurisdiction over a defendant where the intended effects of the defendant's non-forum conduct were purposely directed at and caused harm in the forum state.  Calder v. Jones, 465 U.S. 783, 789-90 (1984) (adopting "effects test" for libel, invasion of privacy, and intentional infliction of emotional distress claims where defendant's Florida conduct had "effects" in California, the forum state).  Consistent with this precedent, the Ninth Circuit has held that a district

1   court should apply different specific jurisdiction tests to contract and tort cases.  <u>See Roth v.</u>

2   <u>Garcia Marquez</u>, 942 F.2d 617, 621 (9th Cir. 1991) (stating that in determining whether court

3   has specific jurisdiction over defendant, "[i]t is important to distinguish contract from tort

4   actions"); <u>Ziegler</u>, 64 F.3d at 473.

5         In cases involving certain types of torts, the Ninth Circuit has held that courts should

6   apply the "effects test" and that "jurisdiction may attach if an out-of-forum defendant merely

7   engages in conduct aimed at, and having an effect in, the situs state." <u>Ziegler</u>, 64 F.3d at 473.

8   In cases arising out of contractual relationships, including those involving related tort claims,

9   the Ninth Circuit applies the "purposeful availment" test enunciated in <u>Hanson</u>.[1]  Plaintiff's

10   Amended Complaint does not state any contract claims, but rather, attempts to state claims

11   under the All Writs Act, the Anti Injunction Act, and the Declaratory Judgment Act.

12   Although these claims are not traditional tort claims, thy are more akin to tort claims than

13   contract claims.[2]  Because it is Plaintiff's burden to establish jurisdiction, the Court looks to

14   the allegations in Plaintiff's Complaint.  <u>Ziegler</u>, 64 F.3d at 473.

15         Plaintiff's Complaint does not allege any action by Defendants aimed at the State of

16   Arizona or causing harm in Arizona.  Plaintiff does allege that "Defendant States are jointly

17   and in concert mounting impermissible collateral attack on a Federal Court Judgment and

18   Order entered in the United States District Court for the District of Arizona[,]" but there is

19

20

21       [1] <u>See</u>, <u>e.g.</u>, <u>Roth</u>, 942 F.2d at 621 (applying purposeful availment test in breach of contract action); <u>Gray & Co. v. Firstenberg Mach. Co.</u>, 913 F.2d 758, 760 (9th Cir. 1990)

22   (applying purposeful availment test in case where the plaintiff brought action for rescission, breach of warranty, and misrepresentation);  <u>McGlinchy v. Shell Chem. Co.</u>, 845 F.2d 802,

23   817 (9th Cir. 1988) (finding effects test inapplicable and stating that, "unlike <u>Calder</u> and

24   <u>Haisten</u>, in this case personal jurisdiction is sought on a contract claim, not on a tort claim").

25       [2]Similarly, in <u>Ziegler</u>, the Ninth Circuit held that a section 1983 claim for deprivation of constitutional rights was more akin to a tort claim than a contract claim and required

26   application of the tort-case standard to the question of purposeful availment.  <u>See Ziegler</u>, 64

27   F.3d at 474 (noting that the three elements of purposeful availment in tort cases are: (1) intentional action; (2) aimed at the forum state; and (3) causing harm that the defendant

28   should have anticipated would be suffered in the forum state).

1    no allegation that the alleged "collateral attack" is occurring within Arizona or directed or

2    causing harm in Arizona. (Dkt. ¶ 6).  To the contrary, Plaintiff alleges that the activities in

3    question are Plaintiff's "commercial activities in Defendant States."   (Dkt. 5, ¶ 16).

4    Plaintiff's numerous other allegations also involve activities occurring in states other than

5    Arizona.  Such allegations do not satisfy the effects test enunciated in <u>Ziegler</u>.

6        Finally, in analyzing the purposeful availment requirement, the Ninth Circuit performs

7    a qualitative evaluation of the defendant's contact with the forum state to determine whether

8    "the 'defendant's conduct and connection with the forum State are such that he should

9    reasonably anticipate being haled into court there.'" <u>Core-Vent</u>, 11 F.3d at 1485 (quoting

10   <u>Worldwide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)).  Defendants have not

11   engaged in any conduct in connection with the State of Arizona that such that they should

12   "reasonably anticipate being haled into court" here.  The Court finds that Defendants have

13   not purposefully availed themselves of the privilege of conducting activities within Arizona.

14   Thus, Defendants have not invoked the benefits and protections of Arizona's laws.  <u>See</u>

15   <u>Hanson</u>, 357 U.S. at 253 (citing <u>Int'l Shoe</u>, 326 U.S. at 319).

16                    **2.    Claim Arises Out of Activities**

17       The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's

18   cause of action arises out of the defendant's forum-related activities. <u>Doe</u>, 112 F.3d at 1051;

19   <u>see</u> <u>Omeluk</u>, 52 F.3d at 271.  The "arising out of" requirement is met if, but for the contacts

20   between the defendant and the forum state, the cause of action would not have arisen.  <u>See</u>

21   <u>Terracom</u>, 49 F.3d at 561.  The Court, having determined that the purposeful availment

22   requirement has not been met, need not analyze the "arising out of" requirement.

23   Nonetheless, the Court notes that the "but for" test is not satisfied by the allegations

24   regarding Defendants activities.  The only link with Arizona is the stipulated final judgment

25   Plaintiff entered with nonparties to this action.  Thus, Plaintiff's legal claims do not arise out

26   of Defendants' forum-related activities, but rather, arise out of Defendants' investigative

27   activities in other states.

28

### 3.    Reasonableness of Jurisdiction

An unreasonable exercise of jurisdiction violates the Due Process Clause even if the "purposeful availment" and "arising out of" requirements of the specific jurisdiction test are satisfied.  See Ziegler, 64 F.3d at 474-75; Int'l Shoe, 326 U.S. at 316 (holding that exercise of personal jurisdiction must "not offend traditional notions of fair play and substantial justice").   A district court presumes, however, that its exercise of jurisdiction over a defendant is reasonable if the first two requirements of the specific jurisdiction test are met.  See Ballard, 65 F.3d at 1500 (citing Sher, 911 F.2d at 1364).  If the first two requirements are satisfied, then the burden of proof shifts and the defendant " must 'present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King, 471 U.S. at 477).  Because the first two requirements have not been satisfied in this case and the Court cannot exercise personal jurisdiction over Defendants, the Court need not determine whether the exercise of jurisdiction would be "reasonable."  It is clear, however, under the Ninth Circuit's standards for reasonableness that the exercise of specific jurisdiction over Defendants in the State of Arizona would be unreasonable.[3]

In summary, Plaintiff has not satisfied the three-prong specific jurisdiction test with respect to Defendants.  The Court holds that it cannot exercise specific jurisdiction over Defendants. Therefore, the various Motions to Dismiss for lack of personal jurisdiction will be granted as to all Defendants.

---

[3]The Ninth Circuit considers the following seven factors in determining whether the exercise of specific jurisdiction over a defendant is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant of litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  See Ziegler, 64 F.3d at 475 (citing Terracom, 49 F.3d at 561) (finding that all seven factors must be weighed, but none are dispositive); see also Worldwide Volkswagen, 444 U.S. at 292 (listing several of the seven factors).  These factors suggest that personal jurisdiction would be unreasonable in Arizona.

1  **II.      Remaining Issues**

2        Defendants also request dismissal of the complaint on various other grounds including

3  Eleventh Amendment immunity, failure to state a claim under the All Writs Act, improper

4  venue, and pursuant to the <u>Younger</u> abstention doctrine.  Because the Court does not have

5  personal jurisdiction over Defendants, it need not address Defendants' other arguments.

6  **III.     Motions for Sanctions**

7        Certain Defendants have moved for Rule 11 sanctions against Plaintiff and Plaintiff's

8  counsel.  (<u>See</u> Dkts.47, 48, 49, 50, 51).  These Defendants essentially contend that this case

9  was presented for an improper purpose such as to harass or to cause unnecessary delay, to

10 needlessly increase the costs of litigation, to improperly interfere, delay, and obstruct the

11 Defendant States' lawful investigations of Plaintiff's activities, or to intimidate other States

12 and prevent them from conducting their own investigations in Plaintiff's activities.

13 Defendants contend that Plaintiff's claims are not warranted by existing law or by the facts.

14 In Response, Plaintiff's counsel provides extensive documentation of the factual and legal

15 research undertaken prior to bringing this lawsuit, and in turn, seeks sanctions against the

16 Defendants who have sought sanctions.  The Court is not convinced that sanctions are

17 appropriate against either Plaintiff or Defendants in this case in light of the complexity of

18 issues involved.  Thus, both Plaintiff's and Defendants' requests for sanctions will be denied.

19 ...

20 ...

21 ...

22 ...

23 ...

24 ...

25 ...

26 ...

27 ...

28 ...

1    Accordingly,

2        **IT IS ORDERED** granting Defendants' various motions to dismiss (Dkts. 25, 34, 35,

3    37, 38) for lack of personal jurisdiction over Defendants.  The Complaint is dismissed as to

4    all Defendants.

5        **IT IS FURTHER ORDERED** denying Plaintiff's Motion for Temporary Restraining

6    Order (Dkt. 6).

7        **IT IS FURTHER ORDERED** denying Defendants' various motions for sanctions

8    (Dkts. 47, 49, 51).

9        DATED this 26th day of November, 2007.

10

11    _____
                          Earl H. Carroll
12                    United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28